# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TONY ALLEN PRESSLER,

      Plaintiff,

v.

NEVADA DEPARTMENT OF PUBLIC
SAFETY, et al.,

      Defendants.

Case No.: 3:19-cv-00494-RCJ-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 1, 1-1, 3, 4, 5, 5-1, 5-2, 7, 8

      This Report and Recommendation is made to the Honorable Robert C. Jones, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

      Plaintiff, who is an inmate at the Elko County Detention Center (and previously at the Elko County Jail) has filed an application to proceed in forma pauperis (IFP) (ECF No. 1), a pro se complaint (ECF No. 1-1), a motion to amend and proposed amended complaint (ECF Nos. 3, 3-1), a motion for appointment of counsel (ECF No. 4), another motion to amend and proposed (second) amended complaint[1] (ECF Nos. 5, 5-1, 5-2), a motion for request of case status (ECF No. 7), and a request for submission of his motion for appointment of counsel (ECF No. 8).[2]

      First, the court recommends granting the IFP application (ECF No. 1-1) which allows Plaintiff to pay the $350 filing fee over time. Second, the most recent motion for leave to amend (ECF No. 5) should be granted; the court has screened the proposed SAC; and, it is recommended

---

[1] The court will refer to the latest iteration of the complaint as the second amended complaint or "SAC."

[2] This was docketed as a motion, but is only a request for submission of the previously filed motion for appointment of counsel.

that certain defendants be dismissed with prejudice, and that the remaining claims and parties be dismissed with leave to amend. Third, it is recommended that the motion for case status be denied as moot. Finally, the motion for appointment of counsel should be denied.

## I. IFP APPLICATION

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

An inmate submitting an application to proceed IFP must also "submit a certificate from the institution certifying the amount of funds currently held in the applicant's trust account at the institution and the net deposits in the applicant's account for the six months prior to the date of submission of the application." LSR 1-2; *see also* 28 U.S.C. § 1915(a)(2). If the inmate has been at the institution for less than six months, "the certificate must show the account's activity for this shortened period." LSR 1-2.

If a prisoner brings a civil action IFP, the prisoner is still required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). The court will assess and collect (when funds exist) an initial partial filing fee that is calculated as 20 percent of the greater of the average monthly deposits or the average monthly balance for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A)-(B). After the initial partial filing fee is paid, the prisoner is required to make monthly payments equal to 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency that has custody of the prisoner will forward payments from the prisoner's account to the court clerk each time the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(2).

Plaintiff's certified account statement indicates that his average monthly balance for the last six months was $3.42, and his average monthly deposits were $61.

Plaintiff's application to proceed IFP should be granted. Plaintiff is required to pay an initial partial filing fee in the amount of $12.20 (20 percent of $61). Thereafter, whenever his prison account exceeds $10, he must make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the $350 filing fee is paid.

## II. MOTIONS FOR LEAVE TO AMEND

Plaintiff submitted an original complaint (ECF No. 1-1), and then filed a motion for leave to amend and proposed amended complaint (ECF Nos. 3, 3-1). He then filed a second motion to amend, and proposed (second) amended complaint, the SAC. (ECF Nos. 5, 5-1, 5-2.) Plaintiff's second motion to amend (ECF No. 5) should be granted, and the SAC (ECF Nos. 5-1, 5-2) should be filed. The first motion to amend (ECF No. 3) should then be denied as moot. The court will now screen the SAC, which supersedes the prior pleadings.

# III. SCREENING

**A. Standard**

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395

U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. The SAC**

The SAC names the following defendants: the Elko County District Attorney's Office, Elko County District Attorney Tyler J. Ingram, Elko County Deputy District Attorney Mark S. Mills; the City of Elko; Elko Police Department, Elko Police Department Officers Josh Taylor, Tyler Trouten, S. Daz, Ratliff, McKnown, O'Farrell, Sergeant Dunckhorst, TFO Keema, and Ben Reed Jr.; Elko County; Elko County Sheriff's Department, Elko County Sheriff Aitor Narvaiza, Elko County Sheriff's Department Lieutenant Silva, Elko County Sheriff's Department Sergeant D. Fisher, and Elko County Sheriff's Department Deputies Aspen Carrol, J. Carpenter, James Mather, and Luiz Carlos Nunes; the State of Nevada; Nevada Division of

Investigation (NDI) and NDI Detectives Scott Smith and Tim Roabe; the South Fork Tribal Police Department and South Fork Tribal Chief Andrew Neff. Plaintiff's amended complaint includes eleven counts.

**C. 42 U.S.C. § 1983**

Preliminarily, the court notes that 42 U.S.C. § 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted). To state a claim under section 1983, a plaintiff must allege: (1) his or her civil rights were violated, (2) by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48-49 (1988). To adequately plead the section 1983 elements, a complaint must identify what constitutional right each defendant violated, and provide sufficient facts to plausibly support each violation. *See e.g., Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (noting defendants must personally participate in misconduct to be liable under section 1983). The "threshold inquiry in a § 1983 suit" requires courts "to 'identify the specific constitutional right' at issue." *Manuel v. City of Joliet*, 137 S.Ct. 911, 920 (2017) (citing *Albright*, 510 U.S. at 271). "After pinpointing that right, courts still must determine the elements of, and rules associated with, an action seeking damages for its violation." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 257-58 (1978)).

**D. The State of Nevada, NDI, and NDI Detectives Smith and Roabe**

Plaintiff has named the State of Nevada, NDI and NDI detectives Steve Smith and NDI Detective Tim Roabe as defendants. The State of Nevada and its agency—NDI— are not persons that may be sued under section 1983, and furthermore, they may not be sued in federal court

because of sovereign immunity under the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); U.S. Const. amend XI. In addition, Plaintiff may not proceed against state officials Steve Smith and Tim Roabe insofar as they are sued in their *official capacities* for *damages*. *See Kentucky v. Graham,* 473 U.S. 159 (1985); *Will,* 491 U.S. at 71. Therefore, the State of Nevada and NDI should be dismissed from this action with prejudice. The claims against Smith and Roabe in their official capacities for damages should likewise be dismissed with prejudice. Plaintiff may proceed against Smith and Roabe, to the extent he otherwise states a colorable claim for relief, insofar as he sues them in their individual capacities for injunctive relief.

The court will now address each of Plaintiff's claims.

**E. Counts I, II, VII and X**

In Counts I, II and VII, Plaintiff alleges that the Elko Police Department and Officers Josh Taylor, O'Farrell, Shane Daz, McKown (Count I), Elko County Sheriff's Department and Sheriff Aitor Narvaiza, Sergeant D. Fisher, and Deputies Aspen Carrol, James Mather, and Luiz Carlos Nunes (Count II), and South Fork Tribal Police Chief Andrew Neff (Count VII) failed to follow NRS 289.830 as well as their own policies by not activating their portable event recording device (body cameras), in violation of his rights under the Due Process Clause as well as the Sixth and Eighth Amendments. He asserts that because the officers did not use their body cameras he is unable to show he was not the driver of the Highlander vehicle involved in the underlying crime on December 21, 2018. (ECF No. 5-1 at 16, 17, 22. ) Plaintiff further avers that he told Carrol he was not the person they were looking for, and to check the body cameras. Carrol responded: "Ha. Ha. Ha. You are on the body cameras." Later he found out he was not. (ECF No. 5-1 at 15.)

In Count X, Plaintiff alleges that the Elko County Police Department  and Elko County Sheriff's Office have not made or enforced any disciplinary rules for peace officers that fail to operate or intentionally manipulate a body camera. (ECF No. 5-1 at 25.)

The court construes this as a Fourteenth Amendment due process claim based on the alleged failure to collect  evidence.

The Supreme Court has "long interpreted th[e] standard of fairness [required by the Due Process Clause] to require that criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "To safeguard that right, the Court has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *Id.* (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)); *see also Arizona v. Youngblood*, 488 U.S. 51, 55 (1988) (citation omitted).

Generally, to establish a deprivation of due process rights for the failure to collect and preserve potentially exculpatory evidence, the plaintiff must show: (1) the evidence was material; and (2) that the failure to collect the evidence was in bad faith. *Youngblood*, 488 U.S. at 58; *United States v. Martinez-Martinez*, 369 F.3d 1076, 1086 (9th Cir. 2004) ("The failure to collect and preserve evidence that is potentially exculpatory may violate a defendant's due process rights if that failure was motivated by bad faith." "In order to prevail on this claim, [the plaintiff] must first demonstrate that [the evidence] [was] material."); *Miller v. Vasquez*, 868 F.2d 1116, 1120 (9th Cir. 1989) ("[A] bad faith failure to collect potentially exculpatory evidence would violate the due process clause."). To be "material," the evidence must "both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta,* 467 U.S. at 489.

Negligence or recklessness is insufficient; bad faith requires something more akin to "official animus" or a "conscious effort to suppress exculpatory evidence." *See Trombetta*, 467 U.S. at 488. One reason for requiring a bad faith showing in this context is "that whenever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *Youngblood*, 488 U.S. at 57-58 (citation omitted). In addition, there is an "unwillingness to read the 'fundamental fairness' requirement of the Due Process Clause as imposing on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Id*. at 58.

"[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019) (citation omitted). "A municipality may not, however, be sued under a *respondeat superior* theory." *Id*. "A plaintiff must therefore show "*deliberate* action attributable to the municipality [that] directly caused a deprivation of federal rights." *Id*. (citation omitted) (emphasis original).

Here, Plaintiff includes virtually no factual allegations, and only conclusory allegations that these defendants did not turn on their body cameras. There are no allegations concerning the factual circumstances surrounding the alleged constitutional violation. Nor are there facts that would demonstrate bad faith on the part of the officers insofar as they are alleged to have failed to turn on their body cameras to collect evidence.

Therefore, Counts I, II, VII and X should be dismissed, but with leave to amend.

The court notes that it is not clear from the pleadings where Plaintiff's criminal action stands, i.e. whether he is awaiting trial, has already faced a trial, has entered a plea, or has been convicted. He includes various exhibits from his criminal case, but the latest of those appears to be from a pretrial hearing. The status of his criminal action may ultimately have an impact on his civil action insofar as accrual of his claims and/or application of *Heck v. Humphrey* are concerned. *Heck v. Humphrey*, 512 U.S. 477 (1994) (a plaintiff may not bring a section 1983 claim for damages if success on such a claim would necessarily imply the invalidity of the plaintiff's criminal conviction or sentence *unless and until* the conviction or sentence has been overturned). Since the status of the criminal proceeding is not apparent from the face of the SAC, dismissal on this basis is not appropriate at this time.

**F. Counts III, IV, V, VI**

In Count III, Plaintiff alleges that on or before January 12, 2019, Elko County District Attorney Tyler J. Ingram and/or Deputy District Attorney Mark S. Mills (Count III) allowed exculpatory evidence to be destroyed and/or failed to preserve evidence in order to win their case. He states that this violated his right to present a meaningful defense. He states that the evidence was a Ford F-150, Officer Taylor's vehicle, and a Highlander vehicle, which contained DNA and fingerprints and bullet trajectory holes. (ECF No. 5-1 at 18.)

In Counts IV, V, and VI, Plaintiff similarly alleges that NDI, through Scott Smith (Count IV), Elko County Police Department Officers Tyler Trouten, Josh Taylor, S. Daz, Ratliff, McKown, O'Farrell, Sergeant Dunckhorst, TFO Keema, and Ben Reed, Jr. (Count V), Elko County Sheriff's Office and Sheriff Aitor Narvaiza and Sergeant D. Fisher, and Deputies Aspen Carrol, James Mather, and Luiz Carlos Nunes (Count VI), allowed the destruction of material exculpatory evidence and/or failed to preserve evidence in bad faith, in violation of Plaintiff's right to present

a meaningful defense. He again references a Ford F-150 and Officer Taylor's vehicle. (ECF No. 5-1 at 19, 20, 21.)

Plaintiff's sparse allegations potentially implicate the Fourteenth Amendment due process rights regarding the destruction or failure to preserve evidence, and possibly the failure to disclose evidence in violation of *Brady v. Maryland*, 512 U.S. 477 (1994).

The standard for a due process claim based on the alleged destruction or failure to preserve evidence is set forth above. Again, Plaintiff includes no substantive factual averments to support his conclusions that these Defendants violated his Fourteenth Amendment due process right insofar as the failure to preserve evidence or destruction of evidence is concerned. Therefore, to the extent he attempts to state such claims in these Counts, they should be dismissed with leave to amend (except that the State of Nevada, NDI, and official capacity damages claims against Smith and Roabe should be dismissed with prejudice).

It is unclear whether Plaintiff is only claiming the alleged destruction or failure to preserve evidence under the Fourteenth Amendment's Due Process Clause, or whether he is also asserting a claim that the district attorney defendants and/or law enforcement agencies and their personnel failed to disclose evidence under *Brady v. Maryland*, 512 U.S. 477 (1994) (holding that a criminal defendant has a due process right to the prosecutor's disclosure of material that is exculpatory as to guilty or sentencing). To violate *Brady,* "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The evidence is "material" and prejudice results "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different[.]" *United States v. Bagley*, 473 U.S. 667, 682 (1985).

A *Brady* claim is typically analyzed as a procedural due process right. *See Albright*, 510 U.S. at 273 n. 6.

Insofar as Plaintiff's claim can be construed as asserting that *law enforcement agency defendants* failed to disclose exculpatory evidence to the prosecutor, the Ninth Circuit has held that "exculpatory evidence cannot be kept out of the hands of the defense just because the prosecutor does not have it, where an investigating agency does." *United States v. Blanco*, 392 F.3d 382, 388 (9th Cir. 2004). Moreover, "*Brady* suppression occurs when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor.'" *Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006) (per curiam) (citation omitted).

A *Brady* claim asserting that law enforcement *failed to disclose* material, exculpatory evidence is distinct from a claim that law enforcement acted in bad faith in failing to *preserve or gather* potentially exculpatory evidence. *See Tennison v. City & Cnty. of San Francisco*, 570 F.3d 1078, 1087 (9th Cir. 2009) (citation omitted); *see also Youngblood*, 488 U.S. at 57. In a *Brady* failure to disclose claim, the good or bad faith of the government is irrelevant, while in a failure to preserve or gather evidence claim, a showing of bad faith is required. *Id*. (citing *Youngblood*, 488 U.S. at 57). In a *Brady* claim, the "1983 plaintiff must show that police officers acted with deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors." *Id*. at 1088.

In any event, Plaintiff has not asserted sufficient *facts* for the court to determine what type of claims Plaintiff is asserting in these counts, let alone the parameters of the claims.

Again, it is not clear what stage Plaintiff's criminal prosecution is in and this may ultimately implicate his ability to proceed with these claims. *See e.g. Buckley v. Ray*, 848 F.3d 855, 867 (8th Cir. 2017), *cert. denied*, 137 S.Ct. 2314 (2017) (*Brady* claim accrues when criminal charges are

dismissed or conviction is vacated); *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379 (4th Cir. 2014) (closest analogy to failure to disclose exculpatory evidence claim is malicious prosecution for state of limitations purposes); *Heck v. Humphrey*, 512 U.S. 477 (1994) (a plaintiff may not bring a section 1983 claim for damages if success on such a claim would necessarily imply the invalidity of the plaintiff's criminal conviction or sentence *unless and until* the conviction or sentence has been overturned); *Skinner v. Switzer*, 131 S.Ct. 1289, 1300 (2011) (one of the required elements of a *Brady* claim is a showing that had the evidence been disclosed, the result of the proceeding would have been different; therefore, it necessarily challenges the validity of the conviction or sentence and would be *Heck* barred). The status of the criminal case is not apparent from the SAC; therefore, dismissal on this basis is not appropriate at this time.

The court does note that prosecutors are absolutely immune from liability under section 1983 liability when they are carrying out their function as an advocate, but generally are not absolutely immune for administrative and investigative acts. *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Buckley v. Fitzsimmons,* 509 U.S. 273, 277-78 (1993). Decisions regarding disclosure of exculpatory material are within the advocacy function and as such prosecutors are immune from liability for such decisions. *Id*. at 430-32. Since it is not entirely clear whether Plaintiff is asserting the district attorney defendants were functioning as advocates or otherwise, their dismissal on absolute immunity grounds is not recommended at this juncture.

Furthermore, a section 1983 claim against a municipality or the district attorney's office may be premised on a *Brady* violation if Plaintiff alleges that the violation of his rights was attributable to enforcement of a policy or practice. In *Connick v. Thompson*, the Supreme Court held that a district attorney's office could not be liable under section 1983 based on the alleged failure to adequately train assistant district attorneys about their obligations under *Brady* to turn

over exculpatory material unless he demonstrates a pattern of similar violations by assistant district attorneys. Therefore, allegation of a single *Brady* violation cannot support a claim for liability against the municipality.

In sum, the claims in Counts III, IV, V, and VI should be dismissed with leave to amend, except that Nevada and NDI should be dismissed with prejudice, and claims for damages against Smith and Roabe in their official capacities should likewise be dismissed with prejudice. Plaintiff may include allegations against Smith and Roabe in any amendment to the extent the allegations are made against them in their individual capacities for injunctive relief only.

**G. Count VIII**

In Count VIII, Plaintiff alleges that J. Carpenter and Lieutenant Silva at the jail have denied communication and private communication with Plaintiff's counsel. He further avers that the jail forces inmates to choose sleeping at night or access to the inadequate law library. (ECF No. 5-1 at 23.)

Insofar as Plaintiff alleges that Carpenter and Silva have denied him confidential communication with counsel, the court assumes he is referring to counsel in his criminal case. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right…to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *see also Gideon v. Wainwright*, 372 U.S. 335, 342-43 (1963) (the Sixth Amendment right to counsel extends to state court proceedings through the Fourteenth Amendment). "When the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel, that interference violates the Sixth Amendment right to counsel if it substantially prejudices the criminal defendant." *Williams v. Woodford*, 384 F.3d 567, 584-85 (9th Cir. 2004). "A criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his

defense. In American criminal law, the right to privately confer with counsel is nearly sacrosanct." *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014) (citation omitted). "'It is well established that an accused does not enjoy the effective aid of counsel if he is denied the right of private consultation with him.'" *Id.* (quoting *Coplon v. United States*, 191 F.2d 749, 757 (D.C. Cir. 1951); *Mastrian v. McManus*, 554 F.2d 813, 821 (8th Cir. 1977)).

Count VIII implicates the Sixth Amendment, but Plaintiff must include *facts* to support his claim that his constitutional right was violated, i.e., when did the defendants deny him the right to privately confer with counsel and under what circumstances? Therefore, the Sixth Amendment claim that Plaintiff was precluded from conferring privately with criminal counsel should be dismissed with leave to amend.

Plaintiff also appears to assert an access to courts claim in Count VIII with respect to the adequacy of the law library at the jail. Plaintiff includes no specific allegations with respect to this claim, and in particular, there are no factual allegations concerning the role J. Carpenter and Silva had in denying Plaintiff access to an inadequate law library. In addition, a plaintiff asserting that he was denied access to the courts must allege "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). "[A]n inmate cannot establish relevant actual injury by simply establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* at 351. Instead, the inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* "Actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as inability to meet a filing deadline or present a claim." *Id.* at 348.

Plaintiff's claim for a denial of access to the courts should be dismissed with leave to amend.

**H. Count IX**

In Count IX, Plaintiff alleges that the Elko Jail, through J. Carpenter and Lt. Silva, denied Plaintiff access to serious medical treatment, and he has suffered physical and emotional injury. (ECF No. 5-1 at 24.)

A pretrial detainee may bring a claim for denial of the right to adequate medical care, and such claims are evaluated under the Fourteenth Amendment, which applies an objective standard. *See Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018).

Plaintiff includes no factual allegations to support this claim.

Moreover, it is not clear whether Plaintiff seeks to proceed under this claim against Elko County. The county, as a municipality, may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019) (citation omitted). "A municipality may not, however, be sued under a *respondeat superior* theory." *Id*. "A plaintiff must therefore show "*deliberate* action attributable to the municipality [that] directly caused a deprivation of federal rights." *Id*. (citation omitted) (emphasis original). Plaintiff has not included any allegations that would subject Elko County to liability in Count IX.

Count IX should be dismissed, but with leave to amend to include factual allegations to support his claim that his rights were violated relative to his medical care at the jail.

///
///
///
///

**I. Count XI**

In Count XI, Plaintiff alleges that Josh Taylor violated his statutory duties, regulations and polices in the arbitrary use of force and use of deadly force. (ECF No. 5-1 at 26.)

The court interprets this as asserting a claim of excessive force against Taylor. Claims of excessive force during an arrest or other seizure of a free citizen are evaluated under the Fourth Amendment and apply an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Plaintiff includes *no factual allegations* to support his claim that Josh Taylor utilized excessive force. Therefore, Count XI should be dismissed but with leave to amend.

### IV. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has filed a motion for appointment of counsel, and request for submission of that motion. (ECF Nos. 4, 8.) He states that his imprisonment in the Elko County Jail will greatly limit his ability to litigate this case, and the issues are complex and will require significant research and investigation and Plaintiff has no access to an adequate library and has limited knowledge of the law.

"[A] person [generally] has no right to counsel in civil actions." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (citing *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981)). 28 U.S.C. § 1915(e)(1), however, does allow the court to "request an attorney to represent any person unable to afford counsel." That being said, the appointment of counsel in a civil case is within the court's discretion and is only allowed in "exceptional cases." *See Palmer*, 560 F.3d at 970 (citations omitted); *see also Harrington v. Scribner,* 785 F.3d 1299, 1309 (9th Cir. 2015). In "determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.'" *Palmer*, 560 F.3d at 970 (quoting *Weygandt v.*

1  *Look*, 718 F.2d 952, 954 (9th Cir. 1983)); *see also Cano v. Taylor,* 739 F.3d 1213, 1218 (9th Cir.

2  2015). "Neither of these considerations is dispositive and instead must be viewed together." *Id*.

3  (citing *Wilborn v. Escalderon,* 789 F.2d 1328, 1331 (9th Cir. 1986)).

4      Preliminarily, Plaintiff is advised that he need not file a request for submission in his federal

5  court case. That is a state court requirement.

6      Plaintiff has not addressed whether he is likely to succeed on the merits of his claims, and

7  at this juncture, where the court has recommended dismissal of most of the claims with leave to

8  amend, a likelihood of success is not otherwise apparent. Similarly, the court cannot currently

9  discern the complexity of the legal claims to determine Plaintiff's degree of skill in articulating and

10  litigating those claims. Therefore, Plaintiff's motion requesting appointment of counsel should be

11  denied without prejudice at this juncture.

12                    **V. MOTION FOR REQUEST OF CASE STATUS**

13      In light of the issuance of this Report and Recommendation, the motion requesting case

14  status should be **DENIED AS MOOT**.

15                              **VI. RECOMMENDATION**

16  IT IS HEREBY RECOMMENDED that the District Judge enter an order:

17  (1) **GRANTING** Plaintiff's IFP application (ECF No. 1); however, Plaintiff is required to

18      pay, through NDOC, an initial partial filing fee in the amount of $12.20 (20 percent of

19      $61), within thirty days of the entry of any order adopting and accepting this Report and

20      Recommendation. Thereafter, whenever his prison account exceeds $10, he is required to

21      make monthly payments in the amount of 20 percent of the preceding month's income

22      credited to his account until the full $350 filing fee is paid. This is required even if the

23      action is dismissed, or is otherwise unsuccessful. The Clerk should be directed to **SEND** a

copy of an order adopting and accepting this Report and Recommendation to the attention of the Head of Inmate Accounting at the Elko County Detention Center, P.O. Box 2028, Elko, Nevada 89803.

(2) Plaintiff's second motion to amend (ECF No. 5) should be **GRANTED**, and the amended complaint (ECF No. 5-1) should be **FILED**; the first motion to amend (ECF No. 3) should be **DENIED AS MOOT**.

(3) The State of Nevada and Nevada Department of Investigation/NDI should be **DISMISSED WITH PREJUDICE**.

(4) Claims for damages against state officials Steve Smith and Tim Roabe in their *official capacities* for *damages* should be **DISMISSED WITH PREJUDICE**.

(5) The remaining claims and parties should be **DISMISSED WITH LEAVE TO AMEND**.

(6) Plaintiff should be given **30 days** from the date of any order adopting and accepting this Report and Recommendation to file a third amended complaint. Plaintiff should not file a third amended complaint before an order is entered by the District Judge with respect to this Report and Recommendation. The Clerk should be instructed to send Plaintiff a form section 1983 complaint. The amended pleading should be clearly titled "Third Amended Complaint." Plaintiff should be advised that if he fails to file a third amended complaint, this action will be dismissed. The third amended complaint must be complete in and of itself without referring to or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the third amended complaint will no longer be before the court. The third amended complaint should not include parties or claims that were previously dismissed.

The Plaintiff should be aware of the following:

1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: December 12, 2019.

William G. Cobb
United States Magistrate Judge